In re Penny S. **FISHER** f/k/a Penny Sue L'Esperance, Debtor.

**Penny S. Fisher and Brett Rodgers, Plaintiffs,**

**v.**

**Holly Moon and James Richards, Defendants.**

**Bankruptcy No. SG 05–10254. Adversary No. 05–81373.**

United States Bankruptcy Court, W.D. Michigan.

Oct. 4, 2006.

Robert A. Stariha, Stariha Law Offices, P.C., Fremont, MI, for Debtor.

**OPINION**

JO ANN C. STEVENSON, Chief Judge.

This matter comes before the court upon a Complaint filed by the Debtor and the Chapter 13 Trustee to Avoid Fraudulent Transfer Pursuant to 11 U.S.C. § 548(a)(1)(B) and Deprivation of Property Without Due Process against Defendant Newaygo County Treasurer (Treasurer); and to Recover Damages for Wrongful Interference with Possessory Interest against Defendant James Richards (Richards). Both the Treasurer and the Debtor have filed Motions for Summary Judgment. The Chapter 13 Trustee has joined in the Debtor's Motion.

Presented in this adversary proceeding are claims that arise in a case referred to this court by the Standing Order of Reference entered by the United States District Court for the Western District of Michigan on July 24, 1984. This court has jurisdiction over this case pursuant to 28 U.S.C. § 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(H) and (O). Accordingly, the bankruptcy court is authorized to enter a final judgment subject to those appeal rights afforded by 28 U.S.C. § 158 and Fed. R. Bankr.P. 8001 et. seq.

The following constitutes the court's findings of fact and conclusions of law in accordance with Fed. R. Bankr.P. 7052. In reaching its determinations, this court has considered the party's oral arguments, briefs and motions.

***Background***

Penny S. Fisher and her husband John L'Esperance took title to real property located in Bridgeton Township in Newaygo County, Michigan (Bridgeton Township Property or Property). An Affidavit dated March 16, 2000 and a Warranty Deed dated August 18, 1992 were recorded with the Newaygo Register of Deeds on March 31, 2000.

On July 15, 2003, the couple obtained a divorce in Livingston County, Michigan. Prior to and during this time, Fisher and L'Esperance were selling the Bridgeton Township Property on a land contract and the land contract vendees were occupying the Property. As part of the divorce, title to the Bridgeton Township Property was awarded to the Debtor. The Judgment of Divorce was recorded at the Register of Deeds for Newaygo County on August 28, 2003.

During the pendency of the divorce, the land contract vendees forfeited the Bridgeton Township Property back to the Debtor and John L'Esperance. Even though the Debtor was awarded title to the Property, L'Esperance moved into the Bridgeton Township Property once the vendees moved out. No deed was ever exchanged between the parties and no change of address for the Debtor was ever filed with Newaygo County.

Prior to the time the Debtor acquired title to the Bridgeton Township Property in the divorce and without her knowledge, the 2002 property taxes had become delinquent. The Debtor claims that notices of the delinquent taxes were sent to L'Esperance who failed to advise her of the poten-

tial forfeiture of the Property for non-payment of the taxes.

By the time the Debtor discovered the tax delinquency, a Final Judgment of Foreclosure had been entered in favor of the Newaygo County Treasurer and the redemption period had expired. The Property was sold at auction to James Richards the day after the Debtor filed bankruptcy. Richards proceeded to change the locks on the doors and refused the Debtor entry to the premises.

In her Motion for Summary Judgment, the Debtor argues that despite having notice of the bankruptcy filing, the Treasurer proceeded to sell the Property at auction in violation of the automatic stay pursuant to 11 U.S.C. § 362. The Debtor further argues that the total consideration for the transfer was the outstanding tax obligation of $1,843.75, however the value of the Property was approximately $68,000. Consequently, the transfer constitutes a fraudulent conveyance pursuant to 11 U.S.C. § 548 because less than a reasonably equivalent value was received; the Debtor was rendered insolvent by the transfer; and the transfer occurred within one year of the filing of the petition.

The Treasurer argues that she provided all notices required by the Michigan General Property Tax Act which governs the foreclosure of property due to non-payment of taxes. Pursuant to this Act, the Debtor's interest in the Property was extinguished and title was vested in the Treasurer upon the entry of the Judgment of Foreclosure and after the redemption period expired. Consequently, the Debtor did not have a proprietary interest in the property at the time of her bankruptcy filing on July 25, 2005 and the sale by the Treasurer did not violate the automatic stay.

### Summary Judgment Standard

Summary Judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Bankr.P. 7056. The summary judgment rule requires that the disputed facts be material, that is, facts which are defined by substantive law and are necessary to apply the law. "The rule also requires that the dispute be genuine, that is if a reasonable jury could return a judgment for the non-moving party." *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968). "Only disputes over the facts that might affect the outcome of the suit under the governing law will preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The court must draw all inferences in a light most favorable to the non-moving party, but the court may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Financial Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir.1992)(quoting *Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

### Fraudulent Transfer

The Sixth Circuit has ruled that the consideration received at a non-collusive, regularly conducted real estate foreclosure sale constitutes a reasonable equivalent value under § 548(a)(2)(A). *In re Winshall Settlor's Trust*, 758 F.2d 1136, 1139 (6th Cir.1985).

Some nine years later, the Supreme Court made the same determination. In *BFP v. Resolution Trust Corp.*, 511 U.S.

531, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994), BFP took title to a home subject to a deed of trust in favor of Imperial Savings Association. Imperial Savings entered a notice of default after BFP failed to service the loan. The home was purchased for substantially less than its reasonably equivalent value at a properly noticed foreclosure sale. BFP attempted to have the sale set aside as a fraudulent transfer.

The Supreme Court stated: "While, under fraudulent transfer law, a grossly inadequate price raises a rebuttable presumption of actual fraudulent intent, it is black letter foreclosure law that, when a State's procedures are followed, the mere inadequacy of a foreclosure sale price is no basis for setting the sale aside." *Id.* at 545, 114 S.Ct. at 1765.

Although the Supreme Court also noted that its ruling covers only mortgage foreclosures of real estate and that the "considerations bearing upon other foreclosures and forced sales (to satisfy tax liens, for example) may be different," this court sees no distinction between a foreclosure sale and a forced tax sale. Consequently, we find that if the Treasurer followed the State's procedural requirements, the sale price alone will not be cause for setting aside the transfer.

### County Tax Lien Foreclosure Procedure

Upon receipt of the tax roll, a county treasurer is required to collect taxes. In order to do so, she must mail to each taxpayer at their last known address, a statement showing the description of the property against which the tax is levied, the taxable value of the property and the amount of tax on the property. MCLA § 211.44. There is no dispute that the Treasurer did exactly this.

All property that has delinquent taxes is subject to forfeiture, foreclosure and sale for the enforcement and collection of the taxes. On March 1 of each year, the taxes levied in the year immediately preceding that are unpaid, are delinquent. MCLA § 211.78a. In this case, the unpaid 2002 property taxes were returned delinquent on March 1, 2003.

For all such property, the county treasurer must send notice by first-class mail to the person to whom the tax bill for the property was last sent or to the person identified as the owner of the property. MCLA § 211.78c. The Treasurer sent this notice on June 1, 2003.

Among other things, the notice must state that unless the taxes are paid on or before the March 31 immediately after the entry of an uncontested case of a judgment foreclosing the property, absolute title to the property will vest in the county. MCLA § 211.78c(g). The statement must also say that the person's right of redemption and notice of those rights will expire on the March 31 immediately after the entry of an uncontested case of a judgment foreclosing the property. MCLA § 211.78c(h). There is no dispute that the notices contain this language.

If the tax remains delinquent after the initial notice, then the county treasurer sends notices pursuant to the following schedule:

September 1: A second notice identical to the first to the same parties but including a schedule of additional fees. MCLA § 211.78c.

October 1: An additional fee is added. MCLA § 211.78d.

November 1: The treasurer prepares a list of all property that will be subject to forfeiture for delinquent taxes the following March 1. MCLA § 211.78e(1).

December 1: The county treasurer determines the street address of the delin-

quent property and the name and address of each party. MCLA § 211.78e(2)

February 1: The treasurer sends to the person to whom the tax bill was last sent; or the property owner; or the property occupant; or a person on the tax or title records the same notice as the previous notices. MCLA § 211.78f.

The parties agree that the Treasurer sent a notice on September 1, 2003 by first class mail and another notice by certified mail on or before February 1, 2004. The property was also posted.

On March 1 of the second year following the year in which the unpaid tax bill was issued, in this case 2004, the property is forfeited to the county treasurer. Forfeiture allows the county to seek a judgment of foreclosure. However, the county does not have the right of possession until the April 1 immediately succeeding the entry of a judgment foreclosing the property, after a judgment of foreclosure is entered and all rights of redemption have expired. MCLA § 211.78g(1).

No more than 45 days after the property is forfeited, the county treasurer is required to record with the register of deeds, a certificate that says the property has been forfeited and will be lost if not redeemed within 21 days after the entry of the Foreclosure Judgement. The Treasurer filed and recorded a Certificate of Forfeiture of Real Estate on April 12, 2004, containing the required language.

The county then starts foreclosure proceedings. No later than June 15, the county is required to file a petition with the clerk of the circuit court listing all property forfeited and not redeemed to the county treasurer to be foreclosed upon for the total of the forfeited unpaid delinquent taxes, interest, penalties and fees. The petition is also to include the street address of the property. The petition shall seek a judgment in favor of the foreclosing governmental unit and request that the judgment be entered vesting absolute title to the property in the foreclosing governmental unit without the right of redemption. MCLA § 211.78h. The Treasurer filed this petition on June 14, 2004.

Before a judgment of foreclosure can be entered however, the owner of an interest in the property must be given two opportunities to object to the foreclosure: 1) a show cause hearing before the county; and 2) the actual foreclosure hearing before the court. MCLA § 211.78j, § 211.78k. The show cause hearing must be held at least 7 days before the foreclosure hearing. The Newaygo County Circuit Court set this hearing for February 8, 2005.

Property forfeited to the county may be redeemed any time on or before the March 31 date by paying the total amount of unpaid taxes, interest, fees, penalties and fees. MCLA § 211.78g(3). The Debtor never redeemed the property. If she had, upon payment the county treasurer would have issued a certificate that would have been filed with the Register of Deeds. MCLA § 211.78g(6).

No later than the May 1 immediately after the property is forfeited, the county must initiate a search of the title and tax records to identify the owners of any interest in the property and to inform them of the show cause and foreclosure hearing. MCLA § 211.78i(1). Although the Debtor filed her divorce judgment with the Register of Deeds, she failed to provide a current address where the tax notices should be sent.[1] This, she could have done for a

---

1. It should be noted that at some point the Treasurer did look at the Judgment of Divorce and noted that the property belonged to Fish-

er. Perhaps as a result of this discovery, the Treasurer began to send notice to Fisher at a

nominal fee. Consequently, the Treasurer had no accurate address, and no reason to believe the address she had was lacking. Even so, failure of the county treasurer to give notice of these hearings does not invalidate any proceeding if the owner was accorded the minimum due process rights required by the state or United States Constitution. MCLA § 211.78i(10).

At the show cause hearing the owner of the property may either redeem the property or argue that the property should not have been foreclosed because a) no law authorizes the tax; b) the person appointed to decide whether a tax shall be levied acted without jurisdiction or did not impose the tax; c) the property was exempt; d) the tax was paid; e) the tax was assessed fraudulently; or f) the description of the property was so unclear that the forfeiture was void. MCLA § 211.78j, 78k(2). This hearing was held on January 18, 2005. Needless to say, the Debtor did not appear at this hearing.

The court must enter final judgment no later than the March 30 immediately succeeding the hearing. The judgment is effective on the March 31 immediately succeeding the hearing and all redemption rights expire. MCLA § 211.78k(5). In this case, the Final Judgment of Foreclosure was issued on February 8, 2005 and became effective on March 31, 2005.

A person is deemed to have had notice if the county followed the procedures for notice by mail, visits to the property and publication; or the person had constructive notice by acquiring an interest in the property after the date the notice of forfeiture was recorded; the person appeared at the hearing or filed an objection prior to the hearing; or prior to the hearing, the person had actual notice of the hearing. MCLA § 211.78k(5)(f).

Unless there is a successful appeal, a foreclosure judgment is a final order and may not be modified, stayed or held invalid after the March 31 immediately succeeding its entry. MCLA § 211.78k(5)(g). Unless there is a redemption or an appeal, absolute title to the property vests in the foreclosing county. MCLA § 211.78k(6). In this case, the Final Judgment of Foreclosure was recorded on April 19, 2005.

As authorized by MCLA § 211.78m(2), the Treasurer was authorized and did conduct a public auction of the Property on July 26, 2005. It was sold to J & L Properties and Cornerstone Investments, LLC, a company owned by James Richards.

Consequently we find that the Treasurer followed all State procedural requirements and the sale can not be set aside as a fraudulent transfer.

Although this may seem like a harsh result, there is a public policy issue at stake. First, it is in the best interest of everyone that property be available for purchase by a third party and returned to the tax rolls. Next, as stated by the Supreme Court, "the general welfare of society is involved in the security of the titles to real estate." If the position urged by the Debtor were followed, "the title to every piece of realty purchased at foreclosure would be under a federally-created cloud." No purchaser would be able to claim title free of liens, if the foreclosed upon party could file bankruptcy and prevail in a fraudulent transfer suit, even when the taxing authority followed the required procedures and the Debtor could have provided a current address for noticing purposes.

Because we find that the Treasurer followed all procedural requirements, there can be no due process violations, and no

---

Brighton, Michigan address in addition to the     Bridgeton Township Property address.

wrongful interference with the possessory interest of the Debtor. Both the Treasurer and Richards obtained title to the Property by legal means, after following the notice provisions codified in the statute.

### Violation of the Automatic Stay

 Debtor claims that the Treasurer violated the automatic stay when she proceeded with the sale of the Property even after she had notice of the bankruptcy filing. As stated in *Federal Land Bank of Louisville v. Glenn et al.*, 760 F.2d 1428 (6th Cir.1985), "all courts agree that at some point in the foreclosure process, the right to cure a default is irretrievable." This is also true of the tax lien foreclosure process.

In a mortgage foreclosure situation, *Glenn* determined that this cut-off date is the sale of the premises. The Sixth Circuit reasoned that picking a date between the beginning of the process, which would offer more protection to the mortgage holder and make home mortgages a more attractive investment, and the end of the process, which would favor the debtor and meet the purpose of a Chapter 13 bankruptcy, the less violence would be done to the competing concerns and the language of the statute, which the Court found to be one of compromise anyway. We also agree that a middle ground should be chosen when dealing with a tax lien foreclosure.

In *In re Pickett*, 325 B.R. 579 (Bankr. E.D.Mich.2005), a case very similar to this one, property was sold to a third party as a result of a tax foreclosure by the State of Michigan. Judge Shapiro ruled that title to the property passed after the expiration of the 21 day redemption period of the Judgment of Foreclosure.

Following this guidance, and in keeping with the reasoning of the *Glenn* and *Pickett* decisions, we find that the point at which title passed in this Property was after the last day of redemption as determined in the Final Judgment of Foreclosure issued on February 8, 2005. Because the Debtor did not contest the matter, this date would be March 31, 2005. This was the date the Debtor lost all right, title and interest to the Property.

Consequently, when the Debtor filed bankruptcy on July 25, 2005, she no longer had any proprietary interest in the Bridgeton Township Property and the sale of this Property on July 26, 2005 did not violate the automatic stay.