**In re Alfreda J. WALLACE, Debtor.**

**FEDERAL NATIONAL ASSOCIATION, Plaintiff,**

v.

**Alfreda J. WALLACE & Raymond Johnson, Trustee, Defendants.**

**Bankruptcy No. NG 81–02454. Adv. No. 83–0409.**

United States Bankruptcy Court, W.D. Michigan.

Aug. 29, 1983.

**30**

Varnum, Riddering, Wierengo & Christenson, Thomas C. Clinton, Grand Rapids, Mich., for plaintiff.

Legal Aid of Western Michigan, John McCullough, Grand Rapids, Mich., for defendants.

Raymond B. Johnson, trustee.

## OPINION AND ORDER

DAVID E. NIMS, Jr., Bankruptcy Judge.

Federal National Mortgage Association (FNMA), assignee of a mortgage on the residence of Alfreda Wallace, the Debtor, filed a Complaint for a Declaratory Judgment that:

1. The filing and confirmation of a Chapter 13 Plan did not reinstate the mortgage previously foreclosed by FNMA.

2. The statutory redemption period continued to run during the term of Wallace's Chapter 13 Plan and expired on December 11, 1981.

3. FNMA is entitled to immediate possession of the property which is subject to the said mortgage.

The facts are not in dispute and are set forth in the pleadings and the records and files in this case.

Wallace executed a mortgage on her residence in Grand Rapids on July 15, 1976, which mortgage was subsequently assigned to FNMA. In May 1981, FNMA commenced foreclosure proceedings and a foreclosure sale was held on June 11, 1981. FNMA purchased the property for the amount of the debt owed it on that date, $20,139.90.

On June 16, 1981, Wallace filed a petition under Chapter 13 of Title 11 of the U.S.C. Her plan proposed to cure her default by making payments on the arrearages within the plan and to make current payments outside the plan. The plan was confirmed on August 17, 1981. Defendant, Raymond B. Johnson, a Standing Chapter 13 Trustee, was appointed Trustee. Johnson has not filed an answer and has not participated in this proceeding.

On November 18, 1982, Johnson filed a petition to dismiss the case because Wallace was not making her payments under the plan. On December 6, 1982, the case was dismissed. During the administration of this case, FNMA was paid $941.00 on its arrearage of $2,795.36.

On January 14, 1983, FNMA wrote to Wallace notifying her that the period of

redemption expired December 11, 1981, and asked her to vacate the premises by February 14, 1983. On February 10, 1983, the Legal Aid of Western Michigan advised FNMA's agent that since Wallace's mortgage was reinstated by the Court, the foreclosure sale was set aside and it was necessary that another foreclosure be commenced.

In Michigan, most foreclosures will be by publication and in the case of residential property where the amount due is more than 66⅔% of the original indebtedness secured by the mortgage, the mortgagor shall have six months in which to redeem. If there is a redemption, the foreclosure deed is "void and of no effect." Mich.Comp. Laws § 600.3240 (Mich.Stat.Ann. § 27 A.3240 (Callaghan, 1980)).

The filing of a petition operated as a stay of any act to obtain possession of the estate and this stay continues until the property ceases to be property of the estate and the case is closed, dismissed, a discharge is granted or denied, or relief from stay if granted. 11 U.S.C. § 362(a), (c).

It is claimed by Wallace that upon the filing of her petition, the automatic stay began a tolling of the redemption period which continued until the automatic stay terminated upon dismissal of her case. Several cases are cited to support this theory. *In re H & W Enterprises, Inc.* 19 B.R. 582 (Bkrtcy.D.D.Iowa 1982); *In re Sapphire Investments* 19 B.R. 492 (Bkrtcy.D.Ariz. 1982); *In re Dohm* 14 B.R. 701 (Bkrtcy.N.D. Ill.1981); *In re Johnson* 8 B.R. 371 (Bkrtcy. D.Minn.1981). *In re Johnson, supra* is typical of these cases and is cited as authority for all later cases. That case holds that 11 U.S.C. § 362(a) operated to suspend or toll the running of the redemption period until the stay is lifted or dissolved. However the court, states at p. 374:

> The purpose of § 362(a) is set forth in the legislative history. In the House Report No. 95–595 at p. 340, U.S.Code Cong. & Admin.News, 1978, p. 6296, it states:
>> "The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the

debtor a breathing spell from his creditors. It stops all collection efforts, all harrassment and all foreclosure actions............ The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally." (Emphasis added).

The purpose of bankruptcy is to provide an equal opportunity for all creditors to share in the assets of debtor available for distribution. § 362(a) is the linchpin in this statutory scheme. It is designed to prevent the piecemeal dismemberment of the debtor's assets by creditors. By preventing creditors from attacking the debtor's estate, the automatic stay gives the trustee time to identify, marshall, and distribute equitably the assets of the debtor.

Some bankruptcy judges have not agreed with *In re Johnson, supra.* See *In re New Town Mall,* 17 B.R. 326 (Bkrtcy.D.S.D.1982); *In re Ecklund & Swedlund Development Corp.,* 17 Bkrtcy. 451 (Bkrtcy.D.Minn.1981). In *In re Ecklund & Swedlund Development Corp., supra,* the judge did concede that "the automatic stay does stop any act to obtain possession of property of the estate." However, since the property was vacant land, no dispossession was involved.

Some courts have rejected the tolling concept and looked to 11 U.S.C. § 108 which provides that "if applicable law * * fixes a period within which the debtor * * *may* * * perform before the later of—

"(1) the end of such period * * and * *

"(2) 60 days after the order for relief."

Cases so holding are *In re Martinson,* 26 B.R. 648, 10 Bankr.Ct.Dec. (CRR) 163 (D.N.D.1983); *In re Jenkins* 19 B.R. 105 (D.C.D.Colo.1982).

In *Bank of the Commonwealth v. Bevan* 13 B.R. 989 (E.D.Mich., 1981) the court

affirmed the bankruptcy judge in using the general powers of 11 U.S.C. § 105 to stay the expiration of the redemption period indefinitely.

All of the above cases cited involved filings under either Chapters 7 or 11 of Title 11 of the U.S.C. The purpose in each case was to buy time, to afford the trustee or debtor in possession an opportunity to redeem property under state law for the benefit of a debtor in a reorganization proceeding or creditors in Chapter 7 or 11 proceedings. In most cases the courts found some theory by which this result could be reached.

However, in a Chapter 13, we are faced with an entirely different concept. While the stay must hold off creditors from seizing property initially, the entire mission is to restructure the debtor's status so that he can acquire a permanent resolution of his mortgage problems without undue hardship to his mortgagee. Even before the Bankruptcy Reform Act of 1978 became effective, Chapter XIII proceedings were saving debtors' homes. *Chatman v. Daugherty* 527 F.2d 691 (6th Cir.1975); *In re Hawks* 471 F.2d 305 (4th Cir.1973); *Hallenbeck v. Penn Mutual Life Insurance Co.* 323 F.2d 566 (4th Cir.1963); *In re Pizzolato,* 281 F.Supp. 109 (W.D.Ark.1967); *In re Moore* 2 Bankr.Ct. Dec. (CRR) 943 (Bkrtcy.W.D.Mich.1976).

Under the new code, the relief to a Chapter 13 debtor is more clearly defined. 11 U.S.C. § 1322(b) provides in part:

"Subject to subsections (a) and (c) of this section, the plan may—* * *

Notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due 'after the date on which the final payment under the plan is due;

In *In re Thompson* 17 B.R. 748 (Bkrtcy. W.D.Mich.1982). Appeal pending (W.D. Mich.) this court held that under the code, even though a foreclosure sale had occurred before the petition was filed, as long as the redemption period was still running, a debtor could cure an arrearage and reinstate his mortgage by making current payments while paying arrearages under his plan. Such a right was based on the broad remedial provision of Chapter 13, not any tolling of the redemption period. Once the plan was completed and discharge granted, the default would be considered to have been cured and then if there were future defaults, a new foreclosure proceeding would be necessary. This decision was later followed in *In re Taddeo* 685 F.2d 24 (2d Cir., 1982); *In re Chambers* 27 B.R. 687 (Bkrtcy. S.D.Fla.1983); *In re Acevedo* 26 B.R. 994 (E.D.N.Y.1982), *In re Briggs* 25 B.R. 317 (D.N.D., 1982).

■ To adopt the tolling theory as proposed by Wallace could lead to results in Chapter 13 cases never intended by Congress. Thus, following the cases cited by her, the tolling period would cease when the discharge was granted in a completed case and thereafter when the redemption time had expired, even though a debtor were current in payments, the foreclosure sale would be final.

■ Therefore, I would hold that upon filing the petition, the automatic stay would only prevent action to recover possession and upon completion of the plan, the default would be cured and the position of the debtor and creditor would be the same as though the foreclosure had never occurred. If, however, the plan is not completed on dismissal, the mortgagee would have the same rights that he would have had if no Chapter 13 petition had been filed.

■ Wallace also claims that the confirmation of her plan reinstates her mortgage so that mortgagee must start its foreclosure anew. No authority is submitted for such a claim and the court can find none.

11 U.S.C. § 349(b) states that,

"Unless the Court for cause orders otherwise, a dismissal of a case other than under § 742 of this title—* *

(3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title."

The Legislative history states:

"The basic purpose of the subsection is to undo the bankruptcy case as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case." House Report No. 95–595, 95th Cong., 1st Sess. 337–38 (1977), Senate Report No. (95–989, 95th Cong. 2nd Sess. 48–9 (1978) U.S. Cong. and Admin.News, pp. 5787, 5835.

Therefore, on the basis of the findings of facts and the conclusions of law as set forth above, IT IS ORDERED as follows:

1. The filing and confirmation of a Chapter 13 plan did not reinstate the mortgage previously foreclosed by FNMA.

2. The statutory redemption period continued to run during the term of Wallace's Chapter 13 plan and expired on December 11, 1981.

3. FNMA is entitled to take such action as may be available to it under appropriate state law as though the Chapter 13 case had never been filed.