**In re EAST LANSING 30 ASSOCIATES, a Michigan Limited Partnership, Debtor.**

**Bankruptcy No. NL 84–00263.**

United States Bankruptcy Court, W.D. Michigan.

Feb. 21, 1985.

Dickinson, Wright, Moon, Van Dusen & Freeman, Gregory L. McClelland, Lansing, Mich., for debtor.

Steven G. Hosler, Lansing, Mich., for claimant.

## REDEMPTION—CHAPTER 11—BALLOON PAYMENT

DAVID E. NIMS, Jr., Bankruptcy Judge.

This matter is before the court on the motion of East Lansing 30 Associates (Debtor) for permission to sell property free and clear of liens and for approval of its marketing plan.

The facts are not in dispute. On December 30, 1976, Cambria Associates (Cambria) gave to Capitol Federal Savings & Loan Association (Capitol) a note and mortgage against certain real estate to secure its indebtedness of $399,794.44. The mortgage was recorded with the Ingham County Register of Deeds.

January 16, 1981, Cambria's interest was assumed by Debtor, a limited partnership in the business of leasing apartments. A balloon payment of the entire indebtedness was due January 16, 1983. When Debtor was unable to make the payment, Capitol commenced foreclosure proceedings and on August 5, 1983, Capitol purchased the property at foreclosure sale for $406,-311.25, the amount owing to it by Debtor.

Debtor filed a petition under 11 U.S.C. Chapter 11 on February 1, 1984, four days before the expiration of the statutory redemption period. The debt to Capitol as of the day of filing is $432,881.94. Except for an unsecured claim of $134.00, the only other debt consists of property taxes on the subject property in the amount of $16,-707.00.

Mr. Nathan Hammond is the only general partner of the debtor; the several limited partners may be "creditors" to the extent of their investments.

Debtor has requested this court's permission to sell the property free and clear of Capitol's lien, and has subjected its proposal to include the following: Bids must be submitted to the court within 60 days of the court's order granting permission to sell; no bid will be accepted, unless it equals or exceeds the property's appraised value of $544,000.00; upon closing of the sale to the successful bidder, Debtor would pay to Capitol the entire amount of its debt and also pay off the property taxes. The remaining amount (about $100,000.00) is to be distributed among the limited partners (as reimbursements for their capital contributions), after which the partnership business will be dissolved.

Capitol has objected to the sale on the grounds that the redemption period expired on February 5, 1984, and that it was not tolled by the filing of the petition, but only extended for 60 days under 11 U.S.C. 108(b); since it was not redeemed within that time, debtors have no interest in it.

This court held in *In re Wallace*, 33 B.R. 29 (Bankr W.D.Mich.1983), a Chapter 13 case, that the automatic stay did not toll the running of the statutory redemption

period, but only stayed actions to recover possession of property. However, this court also held in *In re Thompson*, 17 B.R. 748 (Bankr W.D.Mich.1982), that actions by a creditor to recover property subject to its mortgage does not divest the debtor of his interest in the property until the redemption period has expired, and that the court loses jurisdiction to provide relief to the debtor as to that property only if the equity of redemption had expired prior to the filing of the Chapter 13 petition. In *Thompson*, a Chapter 13 case, debtors' filing within the redemption period gave them the right to de-accelerate the debt, cure arrearages over the plan and reinstate the original mortgage terms, even though the redemption period expired during the pendency of the proceedings. As the court stated in *Wallace*, debtors' rights were based on the "broad remedial provision of Chapter 13, not on any tolling of the redemption period."

Although this is a Chapter 11 rather than a Chapter 13 case, Chapter 11 also has a remedial aim; the ability of the debtor to resolve mortgage problems is as important, or more important in a Chapter 11 case.

Several courts have recognized this, and have, as noted in *Wallace*, advanced one theory or another for the purpose of permitting a debtor in possession to take advantage of its equity of redemption for the benefit of itself and its creditors. See, e.g., *In re Grosso Investment, Inc.*, 457 F.2d 168 (9th Cir.1972) (Redemption period was tolled in Chapter X case.); *Bank of the Commonwealth v. Bevan*, 13 B.R. 989 (E.D.Mich.1981) (Court used 11 U.S.C. § 105 to stay expiration of the redemption period.); *In re Valente*, 34 B.R. 362 (D.Conn.1983) (District Court held that any debtor with a viable interest in property could, under 11 U.S.C. § 1123(a)(5)(G), propose a plan to cure its default. In this

case, even though foreclosure judgment had been entered, Debtor's equity of redemption constituted a viable interest in property)[1]; *In re H & W Enterprises*, 19 B.R. 582 (Bankr D.Ia 1982) and *In re Sapphire Investments*, 19 B.R. 492 (Bankr D.Az 1982)[2] (Both courts held that 11 U.S.C. § 362 tolled running of redemption period.) In the above Chapter 11 cases, as well as in *Thompson* and other Chapter 13 cases with similar holdings, foreclosure had occurred after acceleration of the debt. In these cases, which are typical of those involving mortgage problems, what the debtors intended to accomplish by filing a petition while still holding a "viable interest" in the property, was a plan to pay off the arrearages while reinstating the original mortgage terms.

In this case no acceleration of the debt occurred because, under the terms of the contract, a balloon payment of the entire debt was due when Capitol commenced foreclosure proceedings. Capitol points to this fact for its argument that Debtor is divested of any rights with respect to the property upon expiration of the extended redemption period granted by 11 U.S.C. § 108(b).

Capitol correctly states that under the terms of its contract with Debtor, there is no longer a mortgage to reinstate. Debtor does not intend to reinstate any mortgage; rather its plan is to pay Capitol in full upon close of the sale to the highest bidder.

Most mortgages in Chapter 13 cases (such as *Thompson*) involve residential property, and a debtor's rights with respect to this are governed by 11 U.S.C. § 1322(b)(2) and (5), under which a debtor may cure a default on claims in which the last payment is due after completion of the plan, but may not otherwise modify the mortgagee's contract rights.[3] On the other

---

**1.** In Connecticut, redemption period runs between foreclosure judgment and final confirmed sale.

**2.** *Johnson v. First National Bank of Montevideo, MN*, 719 F.2d 270 (8th Cir.1983), cited by Capitol, takes a contrary view and holds that Debtor is divested of all rights in property where he

fails to redeem before the later of the end of the statutory redemption period or the 60 day period provided by 11 U.S.C. § 108(b).

**3.** 11 U.S.C. § 1322(b)(2) The plan may * * * modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's

hand, the rights of Chapter 11 debtors as to secured claims are set forth in 11 U.S.C. § 1123(a)(5) (permitted methods for executing a plan)[4] and 11 U.S.C. § 1129(b)(2)(A) (cram-down on plan for secured claims).[5] These provisions are not limited to long-term debts and do permit modification of the rights of secured creditors.

If Debtor had proposed, instead of a sale and immediate payment to Capitol, a plan which offered to Capitol deferred payments on its claims over a period of years, such a plan could be confirmed under 11 U.S.C. § 1129(b)(2)(A) notwithstanding the fact that payment in full was due prior to the time of debtor's Chapter 11 filing. As stated by the court in *In re Hollanger*, 15 B.R. 35, 47 (Bankr W.D.La.1981), with regard to secured claims:

> "As one commentary has noted, bankruptcy courts may 'cramdown' feasible plans of reorganization under the reorganization provisions (e.g., Section 1129) of the new Bankruptcy Code, where such plans seek to achieve restructuring of

mortgage debts secured by real estate, as follows:

> (1) The term of of any mortgage debt may be extended;
>
> (2) Payments required by the mortgage debt of either principal or interest may be postponed; and
>
> (3) Deferred or reduced payments of principal or interest may be added to the mortgage balance.

See, Real Property Arrangements, supra, at pps. 720–728. The postponement of arrearages for a reasonable period of time and the extension of payment (i.e., for seven years in the instant case) appears within the permissible limits as conceived by the prior jurisprudence. See, *In re Triangle Inn Associates*, supra; *Wachovia Bank & Trust Co. v. Harris* [455 F.2d 841 (4th Cir.1972) ], supra; *In re Benson* [9 B.R. 854], supra; see, also, *In re KRO Associates*, 4 Bankr.Ct.Dec. 462 (S.D.N.Y.1978); *In re Castle Village Co.*, 4 Bankr.Ct.Dec. 730 (S.D.N.Y.1978)."

---

**4.** principal residence, or of holders of unsecured claims;

11 U.S.C. § 1322(b)(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;

**4.** 11 U.S.C. § 1123(a)(5) provide adequate means for the plan's execution, such as—

(A) retention by the debtor of all or any part of the property of the estate;

(B) transfer of all or any part of the property of the estate to one or more entities, whether organized before or after the confirmation of such plan;

(C) merger or consolidation of the debtor with one or more persons;

(D) sale of all or any part of the property of the estate, either subject to or free of any lien, or the distribution of all or any part of the property of the estate among those having an interest in such property of the estate;

(E) satisfaction or modification of any lien;

(F) cancellation or modification of any indenture or similar instrument;

(G) curing or waiving any default;

(H) extension of a maturity date or a change in an interest rate or other term of outstanding securities;

(I) amendment of the debtor's charter; or

(J) issuance of securities of the debtor, or of any entity referred to in subparagraph (B) or (C) of this paragraph, for cash, for property, for existing securities, or in exchange for claims or interests, or for any other appropriate purpose;

**5.** 11 U.S.C. § 1129(b)(2)(A) With respect to a class of secured claims, the plan provides—

(i)(I) that the holders of such claims retain the lien securing such claims, whether the property subject to such lien is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and

(II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

(ii) for the sale, subject to section 363(k) of this title, of any property that is subject to the lien securing such claims, free and clear of such lien, with such lien to attach to the proceeds of such sale, and the treatment of such lien on proceeds under clause (i) or (iii) of this subparagraph; or

(iii) for the realization by such holders of the indubitable equivalent of such claims.

The marketing plan offered by Debtor in this case would modify Capitol's rights to a lesser degree than would a more traditional Chapter 11 plan. In addition, the plan would involve no risk to Capitol. This is because the proposed sale is conditioned upon receipt of a bid in at least the amount of the land's appraised value, which is an amount greater than Capitol's claim, and Capitol would be paid in full immediately.

Authority for such a sale is set forth in 11 U.S.C. § 1123(a)(5)(D) and 11 U.S.C. § 363(f). Section 1123(a)(5)(D) which provides,

"(a) A plan shall—

\* \* \* \* \* \*

"(5) provide adequate means for the plan's execution, such as—

"(D) sale of all or any part of the property of the estate, either subject to or free of any lien, \* \* \*"

Section 1123(a)(5)(G) also provides that under the plan of reorganization debtor may "cure any default" which is what will occur in this case upon close of the sale.

The court understands that Capitol's motive for objecting to the sale by Debtor is that Capitol wants to be able to retain any equity in the property beyond the amount of its claim and the tax claims. But this would be contrary to the purpose of Chapter 11 which is to rehabilitate a troubled business. Although this case appears to be more in the nature of a liquidation than a reorganization, there is an additional policy to equal distribution and fair treatment to the debtor and all creditors. Allowing Capitol to receive more than it is owed by Debtor would not comport with that policy.

The court would also point out that under the new amendments to the bankruptcy code passed by Congress July 10, 1984, effective October 9, 1984, a foreclosure sale bid for less than fair consideration (that is, a sale for significantly less than the property's value) is vulnerable to avoidance as a fraudulent conveyance under 11 U.S.C. § 548. Under present law there is a split of authority on whether such a sale can be voided. However, the court need not decide that issue here.

In summary, since debtor filed prior to the expiration of the redemption period, it retains an interest in property which permits it to resolve its and its mortgagee's problems by means of remedies provided by the Bankruptcy Code. The marketing plan proposed by Debtor is one of several such remedies; it offers immediate payment in full to Capitol, which is more than the law requires. An order granting Debtor's motion for permission to sell may be entered.