**In re Georgia DANDRIDGE, Debtor.**

**Bankruptcy No. 97–38598–L.**

United States Bankruptcy Court,
W.D. Tennessee,
Western Division.

June 23, 1998.

Irving S. Zeitlin, Memphis, TN, for Georgia Dandridge.

Roger A. Stone, Memphis, TN, for Parent Funding Corporation.

George W. Stevenson, Memphis, TN, Chapter 13 Trustee.

## MEMORANDUM OPINION

JENNIE D. LATTA, Bankruptcy Judge.

Before the Court are the "Motion of Parent Funding Corporation to Lift Stay," "Objection of Parent Funding Corporation to Confirmation of Plan," and "Objection to Confirmation" filed by George W. Stevenson, Chapter 13 trustee ("Trustee"). The Court conducted a consolidated hearing on the motion and objections on March 31, 1998. The parties filed post-hearing briefs on April 21 and 29, 1998. For the following reasons, the Court will schedule a further hearing to determine whether the Debtor's plan is capable of confirmation in light of the conclusions drawn by the Court herein. This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(G) and (L).

## I. FINDINGS OF FACT

### A. Background Facts

The background facts may be summarized as follows. On June 1, 1991, the Debtor executed a "Monthly Installment Amortized Note Secured by Deed of Trust with Prepayment Privilege with Call Option" payable to Parent Funding Corporation in the face amount of $26,036.27 (the "Note"). The note was payable together with interest at the rate of 10.5% per annum in monthly installments of $238.16 until maturity at May 21, 2021. The Note contains the following "call" provision:

> This Note and the indebtedness described herein may, at Note Holders option, be called immediately due and payable at the end of five (5) years and quarterly thereafter. Holder shall give the Borrower not less than three (3) months written notice in advance of the call date if the call option is exercised.

The Note is secured by a second priority Deed of Trust which encumbers the Debtor's residence. The Debtor purchased her residence on June 14, 1991, for $46,000.00. A first priority deed of trust is held by NationsBanc Mortgage Corporation. NationsBanc's principal balance is approximately $13,000. By prior order, NationsBanc's arrearage was established as $5,157.07.

This is not the Debtor's first Chapter 13 bankruptcy case. The Debtor filed a petition on November 17, 1994, which was assigned case number 94–31879–K. The Debtor's plan was confirmed by order entered January 18, 1995. During the pendency of this prior case, the five year anniversary of the Note arrived, and PFC attempted to exercise its call option by issuing a letter to the Debtor on September 24, 1996, naming November 30, 1996 the "call date," meaning that the Debtor would have until the end of February 1997 to repay the entire debt to PFC. PFC then sought relief from the automatic stay to require the Debtor to pay the full remaining balance owed to PFC or to permit PFC to foreclose its deed of trust. In his "Memo-

randum Opinion and Order Re Creditor's Motion to Lift Stay and the Debtor's Objection Thereto," entered April 9, 1997, Bankruptcy Judge G. Harvey Boswell ruled that PFC was bound by the terms of the confirmed plan which provided for repayment of PFC's arrearage claim over the sixty-month term of the plan and for the trustee to act as disbursing agent for ongoing payments to PFC.

Ms. Dandridge's prior case was dismissed December 10, 1997, because the Debtor lost her job. The present petition was filed December 23, 1997. PFC took no action with respect to the call provision during the period between December 10 and December 23, 1997.

The Trustee's original objection to confirmation arose out of the Debtor's claimed exemptions. At the hearing, the Trustee in essence withdrew that objection, stating that the Debtor's exemptions appeared to be in order. While not filing an additional written objection to confirmation, the Trustee questioned the feasibility of the Debtor's plan based upon the opening statements of the attorneys for the Debtor and PFC.

### B. Disputed Factual Issues

In connection with a motion for relief from the automatic stay, the party requesting relief carries the burden of proof on the issue of the debtor's equity in the property. *See* 11 U.S.C. § 362(g)(1). With respect to the value of the Debtor's residence and the debt outstanding to PFC, PFC offered the testimony of Walter Edwards, a vice president of First Corporation, an entity which apparently provides mortgage servicing for PFC. Mr. Edwards testified that he had considerable experience in buying and selling houses. Without objection, Mr. Edwards testified that in his opinion the Debtor's property is worth at most $43,000.00, but that substantial repairs would be required before that price could be obtained. Mr. Edwards claimed to have seen the property within two months before the hearing. He noted that the property needed painting, that there was some rotting wood on the front of the house, and that the roof "looked real tired." On cross examination, Mr. Edwards testified that the property is in the West-

wood subdivision where the average value of houses is $50,000.00. Mr. Edwards testified on cross examination that the Debtor's property could bring $50,000.00 if repaired and painted.

The Debtor testified that there is no rotten wood on her house and that in fact the house is being painted, with the front and side completed in September 1997. The Debtor further testified that the roof was replaced two years ago. The Debtor testified that her home is not in the Westwood subdivision as stated by Mr. Edwards, but is in the Whitehaven/Capleville area. Ms. Dandridge questioned whether Mr. Edwards had inspected the correct house. The Debtor believes that her home is worth between $50,000.00 and $60,000.00.

PFC offered a "Chandler Report" containing tax appraisal and comparable sales information for the Debtor's property. The property tax assessment reflected in the Chandler Report for the Debtor's property was $42,400.00. Comparable sales reflected in the Chandler Report ranged from $18.31 to $52.63 per square foot. The Debtor's property is reported to contain 1,257, rendering a range of values between $23,015.67 and $66,155.91. The range of values for the property asserted by the parties was from $43,000.00 to $60,000.00. Mr. Edwards is not a real estate appraiser and offered no testimony concerning application of the comparable sales to the Debtor's home. Mr. Edwards' testimony concerning the condition of the property differed markedly from that of the Debtor. PFC offered no photographic evidence from which the Court could judge for itself the condition of the property. The discrepancy between Mr. Edwards' testimony and Ms. Dandridge's testimony concerning the condition of the roof was especially troubling. Mr. Edwards appears to have gone out of his way to deprecate the condition of the Debtor's property. Having considered the relevant testimony and exhibits offered by the parties, the Court finds for purposes of this proceeding that the value of the Debtor's residence is $50,000.00.

Mr. Edwards testified that the principal balance owed to PFC is $27,625.62, accrued interest is $2,867.53, accrued late charges are

$1,083.65, and accrued service charges are $385.00, for a total claim of $31,961.80. During the term of the prior bankruptcy case, a number of additions were made to the outstanding principal balance of the loan in an aggregate amount of $844.00. Mr. Edwards at first had no explanation for these additions, but later testified that he believed that the charges represented legal fees. It further appears that $583.65 of the late charges and all of the service charges claimed by PFC to be owed by the Debtor were accrued during the pendency of the prior bankruptcy case. PFC stipulated that there were no orders entered in the prior case allowing additional charges to PFC. If the additional charges are deducted from PFC's asserted claim, the resulting amount owed is $28,-680.50. PFC filed a proof of claim in the amount of $27,725.62. For purposes of this proceeding only, the Court finds that the amount of the claim of PFC is $28,680.50.

The parties stipulated that the principal indebtedness to the first mortgageholder, NationsBanc, is $13,000.00. By prior order, the Debtor has agreed that the arrearage owed to NationsBanc is $5,157.07. Adding the claims of NationsBanc to the claim of PFC results in outstanding liens against the Debtor's residence of $46,837.57. No other encumbrances were proved by PFC. The Debtor has equity in her residence.

## II. ISSUES PRESENTED

PFC raises two legal issues for the Court's consideration:

1. Whether the dismissal of the prior bankruptcy case "validated" the prior notice by PFC of the exercise of the call provision in the Note.

2. Whether the Debtor's plan cannot be confirmed unless it reserves PFC's right to exercise the call provision.

In her posthearing brief, the Debtor raised the following additional issues:

3. Whether the call provision is unenforceable because the Debtor was not specifically told about the provision when she signed the Note.

4. Whether PFC has standing to pursue its motion because PFC alleged-

ly lost its charter on May 16, 1998, or because the Debtor has received communications from another mortgage company concerning the Note.

## III. CONCLUSIONS OF LAW

### A. Effect of Dismissal of Prior Case on Call of PFC Loan

PFC argues that the dismissal of the prior case validates the prior exercise of the call option, and thus that the Debtor's plan cannot be confirmed unless she provides for repayment in full of the outstanding indebtedness to PFC over the life of the plan. The Debtor argues that the issuance of the call letter during the pendency of the prior case was void because it violated the automatic stay. Thus, the Debtor reasons that there has been no exercise of the call option by PFC, and PFC is prevented from doing so now because of the filing of the present case.

In the prior case, the Debtor asserted that the attempted exercise of the call provision by PFC violated the automatic stay, 11 U.S.C. §§ 362(a)(1), (3), (4), (5) and (6). *See In re Dandridge*, No. 94–31879–K, slip op. at 3 (Bankr.W.D. Tenn. April 8, 1997) (hereinafter "Memorandum Opinion"). While Judge Boswell did not specifically state that the exercise of the call provision by PFC violated the automatic stay, it is clear that he believed that PFC was constrained from exercising that option by the automatic stay. In the Memorandum Opinion, Judge Boswell distinguished the call provision of the Dandridge note from provisions for "balloon" payments often found in notes secured by real estate. Unlike a balloon provision, where the borrower knows from the outset when the note will come due, the exercise of the PFC call provision occurs "solely at the option of PFC and their subjective intentions." Memorandum Opinion, *supra*, at 6. Judge Boswell further stated:

If the five year period had expired prior to the Chapter 13 filing, then [PFC] would have been free to explore their options under the rider. But once Dandridge filed bankruptcy, she was entitled to the protections of the automatic stay, and at that point PFC was limited to remedies afford-

ed them under the Bankruptcy Code and more specifically § 362.

Memorandum Opinion, *supra,* at 6–7.

This writer agrees that PFC was prevented from exercising its call option during the prior case because of the automatic stay. The attempted exercise of the call option was an act to recover a claim against the Debtor that arose before the commencement of the case, an act which is prohibited by 11 U.S.C. § 362(a)(6). It was not the mere giving of a notice, but the exercise of a substantive right that would have affected the debtor-creditor relationship and altered the obligations of the Debtor under the Note. This case is thus distinguishable from the cases relied upon by PFC: *Raczynski v. Judge,* 230 Cal.Rptr. 741, 186 Cal.App.3d 504 (1986); *Martir Lugo v. de Jesus Saez (In re de Jesus Saez),* 721 F.2d 848 (1st Cir.1983); *Federal Nat'l Ass'n v. Wallace (In re Wallace),* 33 B.R. 29 (Bankr. W.D.Mich.1983); and *Victoria Grain Co. v. Janesville Elevator Constr., Inc. (In re Victoria Grain Co.),* 45 B.R. 2 (Bankr.D.Minn. 1984).

*Raczynski* is a decision of the California Court of Appeal arising out of a complaint to recover certain assets from a decedent's estate. The defendant, Judge, was the trustee and executor for the decedent. Judge repeatedly failed to respond to orders compelling discovery. Upon motion of the plaintiff, the lower court entered an order striking Judge's answer and entering judgment against him by default. Judge then moved to set aside the default on the basis that when the default judgment was entered, Judge individually was a debtor in a Chapter 11 bankruptcy case. The bankruptcy case was dismissed shortly after the default judgment was entered. The lower court denied Judge's motion, and Judge appealed. The appellate court affirmed, holding that proceedings against Judge were automatically stayed by the filing of his bankruptcy petition, but that the dismissal of the bankruptcy case served to "validate" the entry of the prior default judgment. With all deference to the California court, this Court believes that the decision in that case could have been supported on the basis that Judge had been sued in his representative capacity as trustee

and executor, not in his individual capacity. Judge held legal, but not equitable, title to the assets of the decedent's estate. Thus the automatic stay could not have prevented the entry of a default judgment against Judge in his capacity as trustee. If the holding of the California court were generally accepted, the fundamental protection afforded by the automatic stay would be seriously eroded. There would be little reason for any creditor not to proceed with collection efforts notwithstanding the filing of a bankruptcy case in the hopes that the case would later be dismissed and its actions "validated." The decision of the California Court of Appeal does not have the force of precedent for this Bankruptcy Court.

In *Saez,* the First Circuit found that the taking of mere "preparatory acts" leading to a foreclosure sale did not violate the automatic stay. *Id.* at 853. In that case, the creditor rescheduled a foreclosure sale during the pendency of the debtor's Chapter 13 case while at the same time seeking relief from the automatic stay. The request for relief from the automatic stay was denied, but the debtor's bankruptcy case was dismissed before the foreclosure sale was conducted. The debtor filed a motion for reconsideration of the dismissal of her case two days before the sale but did not serve it upon the secured creditor's attorney. The property was sold at auction to a third party and later resold. After the sale, the bankruptcy court granted the debtor's motion for reconsideration, and subsequently entered an order voiding the auction sale. The ultimate purchaser filed an adversary proceeding to quiet title, or in the alternative, to obtain damages against the foreclosing creditor for breach of warranty. The foreclosing creditor crossclaimed against the debtor for indemnity. The debtor crossclaimed against the foreclosing creditor charging that he had "maliciously persecuted" her. The bankruptcy court dismissed the claims of the purchaser and seller and awarded damages and attorneys' fees to the debtor. *Id.* at 850. The district court affirmed, but the court of appeals reversed, finding that upon dismissal of the debtor's bankruptcy case, the automatic stay was immediately terminated permitting the creditor to foreclose. Thus, as there was

no stay in effect, it was improper to award the debtor damages for violating the stay. *Id.* at 852–53.. With respect to the creditor's scheduling of the foreclosure sale while the bankruptcy case was pending, the court found no proof that the creditor would have proceeded with the sale had the bankruptcy case not been dismissed. The court stated, "It was not shown that these preparatory acts either harassed de Jesus or revived 'the financial pressures that drove [her] into bankruptcy.'" *Id.* at 853 (quoting S.Rep. No. 989, 95th Cong., 2d Sess. 54, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5840–41). As stated before, the attempted exercise of the call provision in the Dandridge case goes far beyond a mere preparatory act, but rather implicates the substantive rights of the Debtor.

In *Wallace*, the debtor filed a Chapter 13 petition after a foreclosure sale of her residence was completed. The issue was whether the statutory period of redemption continued to run during the term of her bankruptcy plan and expired while that case was pending. The Chapter 13 case was dismissed on motion of the standing Chapter 13 trustee for nonpayment. Following the dismissal of the bankruptcy case, the foreclosing creditor wrote to the debtor notifying her that the statutory period of redemption had expired, and that she should vacate the premises. The debtor claimed that the automatic stay tolled the redemption period. The court held that the filing of the Chapter 13 petition before the redemption period had expired would enable the debtor to reinstate her mortgage by making ongoing payments and curing the arrearage through the plan. If the debtor had successfully completed her plan, she would have received a discharge and the position of the debtor and creditor would have been as if no foreclosure had ever occurred. *Wallace*, 33 B.R. at 32. This was not based upon a tolling of the redemption period, but rather upon the "broad remedial provision of Chapter 13." *Id.* Because the debtor's bankruptcy case was dismissed, however, the court held the parties were in the same position they would have been in had the Chapter 13 case never been filed. *Id.* The automatic stay did not toll the running of the redemption period. Unlike the Dandridge case, the *Wallace* case involved no action by a secured creditor during the pendency of the Chapter 13 case, and thus no "validation" of that action when the case was dismissed.

The fourth case relied upon by PFC, *Victoria Grain*, concerns the issue of whether a creditor violates the automatic stay when it files a notice necessary to perfect a mechanic's lien under state law. The court found that the required notice was within those actions contemplated by 11 U.S.C. § 546(b), which subjects the avoidance powers of a bankruptcy trustee under Sections 544, 545, and 549 to any "generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection." *Victoria Grain*, 45 B.R. at 5; *see* 11 U.S.C. § 546(b). Section 546(b) specifies that whenever such law requires seizure of property or commencement of an action to perfect the interest in property, perfection may be accomplished by notice given within the time provided for such seizure or commencement. 11 U.S.C. § 546(b). As the *Victoria Grain* court pointed out, there is a specific exception to the automatic stay which permits a creditor to take "any act to perfect an interest in property to the extent that the trustee's rights and powers are subject to such perfection under § 546(b)" of title 11. *Victoria Grain*, 45 B.R. at 6; *see* 11 U.S.C. § 362(b)(3). PFC does not claim that Section 546(b) applies to its activities in Ms. Dandridge's prior case, and the Court does not believe that it does.

■ The prior attempt by PFC to exercise its call option violated the automatic stay. The Sixth Circuit has said that actions taken in violation of the automatic stay are best described as "invalid," meaning something without legal force or effect, but capable of being ratified. *See Easley v. Pettibone Michigan Corp.*, 990 F.2d 905, 909 (6th Cir. 1993). The Bankruptcy Code expressly permits the bankruptcy court to annul the automatic stay, thus retroactively validating actions taken by a creditor who was unaware of the existence of the automatic stay. *Id.* at 910; *see* 11 U.S.C. § 362(d). According to the Sixth Circuit, actions taken in violation of

the automatic stay are voidable and will be voided "absent limited equitable circumstances." *Id.* at 910–11. This writer believes and holds that Judge Boswell found no equitable considerations to apply in the prior case and held the attempted exercise of the call provision by PFC to be invalid. PFC took no steps to ratify its action during the interim between the dismissal of the prior case and the filing of the present case by the Debtor. PFC is prevented by the automatic stay from exercising the call provision in this case unless the Court determines that grounds exists for terminating the automatic stay. The Court has determined that the Debtor has equity in her property; thus PFC cannot prevail under Section 362(d)(2).[1] The Court will conduct further hearings to determine whether or not the Debtor is able to obtain confirmation of her plan and if not, whether cause exists for terminating the automatic stay under Section 362(d)(1).[2]

## B. Reservation of Rights Under Confirmation Order

PFC asserts that the Debtor's plan cannot be confirmed unless it reserves the right of PFC to exercise its call option. PFC relies upon 11 U.S.C. § 1322(b)(2) which provides:

(b) Subject to subsections (a) and (c) of this section, the plan may—

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims,

or leave unaffected the rights of holders of any class of claims.

PFC asserts that denying it the right to exercise its call option during the term of the plan is an impermissible modification of a claim secured only by the Debtor's principal residence. PFC further asserts that because the initial five-year period of the Note has passed and but for the filing of Debtor's petition PFC would have the right to exercise the call option, the Note should be treated as if it were a note for which the last payment on the original payment schedule is due before the date on which the final payment under the plan is due. In other words, PFC asserts that the Note is a Section 1322(c)(2) obligation rather than a Section 1322(b)(5) obligation.

Section 1322(c)(2) was added to the Bankruptcy Code in the Bankruptcy Reform Act of 1994.[3] It provides:

(c) Notwithstanding subsection (b)(2) and applicable nonbankruptcy law—

(2) in a case in which the last payment on the original payment schedule for a claim secured only by a security interest in real property which is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for the payment of the claim as modified pursuant to section 1325(a)(5) of this title.

11 U.S.C. § 1322(c)(2). Section 1325(a)(5) permits a debtor to pay to the holder of a secured claim the allowed amount of the claim together with interest over the life of the plan.[4] In contrast to Section 1322(c)(2) is

---

1. 11 U.S.C. § 362(d)(2) provides:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

    \*    \*    \*    \*    \*    \*

(2) with respect to a stay of an act against property under subsection (a) of this section, if—
  (A) the debtor does not have an equity in such property; and
  (B) such property is not necessary to an effective reorganization.

2. 11 U.S.C. § 362(d)(1) provides:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
  (1) for cause, including the lack of adequate protection of an interest in property of such party in interest.

3. Bankruptcy Reform Act of 1979, Pub.L. No. 95–598, 92 Stat. 2549 (codified as amended at 11 U.S.C. §§ 101–1330 (1994)).

4. Section 1325(a)(5) provides:
(5) with respect to each allowed secured claim provided for by the plan—
  (A) the holder of such claim has accepted the plan;

Section 1322(b)(5) which relates to long-term loans. It provides:

> (b) Subject to subsections (a) and (c) of this section, the plan may—
>
>> (5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.

11 U.S.C. § 1322(b)(5).

The phrase "original payment schedule" as used in Section 1322(c)(2) is not defined by the Bankruptcy Code. One bankruptcy court has concluded that the phrase may be read broadly "to reach the entirety of the mortgagee's right to payment, including the fully accelerated payment reflected in the foreclosure judgment." *See In re Nepil,* 206 B.R. 72, 74 (Bankr.D.N.J.1997). According to the legislative history, Section 1322(c) was intended to overrule the results reached in two cases decided by the Third Circuit. In the first, *Matter of Roach,* 824 F.2d 1370 (3d Cir.1987), the court held that a debtor could not "cure a default on a home mortgage after there had been a contractual acceleration of the full mortgage debt, a foreclosure judgment, and a foreclosure ·sale, so long as the state law redemption period has not expired." *Id.* at 1371–72. In the second, *First Nat'l Fidelity Corp. v. Perry,* 945 F.2d 61 (3d Cir.1991), the court held that after a foreclosure judgment had been entered, a Chapter 13 debtor could not confirm a plan proposing to pay the judgment over three to five years because such a plan would impermissibly modify the mortgage holder's right to immediate payment from the proceeds of sale of the property. *Id.* at 62–63, 67. It is noteworthy that neither of these cases, to which Section 1322(c) was specifically addressed, contain any information concerning the "original payment schedule" as it existed prior to acceleration. In both of these cases the last payment was due before the final payment

under a proposed plan because the debts had been reduced to judgment, not because the original maturity date specified in the note would fall before the final payment under the proposed plan.

■ In this case, there has been no acceleration or exercise of the call provision. Thus the only date specified ·in the original payment schedule for the last payment to be made is May 21, 2021, a date well after the date on which the last payment would be due under the Debtor's plan. The Court concludes that the rights of the Debtor with respect to the Note are provided by Section 1322(b)(5) rather than Section 1322(c)(2). The presence of the call provision does not alter the Court's conclusion that the last payment on the original payment schedule for the Note is due *after* the final payment under the plan. The call provision is distinguishable from a "balloon" provision, in which a longer amortization schedule is used to calculate regular monthly payments under a note, but the note provides for maturity, according to its original terms, on a specified date before the note would be fully paid according to the schedule of payments. Had the call been exercised before the Debtor's petition was filed, the Court's conclusion also might have been different. In that case, it could be argued that upon exercise of the call provision, the debt had become a short-term Section 1322(c)(2) debt, which would have to be paid in full over the life of the plan. Under the facts of this case, however, the last payment under the Note was clearly due after the last payment under the plan. Thus, pursuant to Section 1322(b)(5), the Debtor's plan must provide for the curing of any default under the Note within a reasonable time and the maintenance of payments while the case is pending.

■ The Court's conclusion that the Debtor may provide for the claim of PFC pursuant to Section 1322(b)(5) does not result in an impermissible modification of the Note.

> (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
>
>> (ii) the value, as of the effective date of the plan, of property to be distributed under the

> plan on account of such claim is not less than the allowed amount of such claim; or
>
> (C) the debtor surrenders the property securing such claim to such holder.

PFC is correct that pursuant to Section 1322(b)(2) the Debtor may not modify its right to exercise its call provision. This does not mean, however, that PFC's rights are not affected by the filing of the Chapter 13 petition. "The lender's power to enforce its rights ... is checked by the Bankruptcy Code's automatic stay provision." *Nobelman v. American Sav. Bank,* 508 U.S. 324, 113 S.Ct. 2106, 2110, 124 L.Ed.2d 228 (1993). The example given by the Supreme Court of a right that is affected by the filing of a Chapter 13 petition is the right to foreclose upon the property in the event of default. *Id.* Clearly the right to foreclose after default is a right provided by the deed of trust. Equally clearly, the Supreme Court does not view the effect of the automatic stay in preventing a creditor from exercising this right as an impermissible modification. The right to foreclose after default differs from the PFC call provision in that if a debtor successfully completes payments under a Chapter 13 plan, the secured lender generally cannot rely on the prepetition default to foreclose after discharge. The PFC call provision, on the other hand, will survive the dismissal of the Debtor's case or her discharge. The stay of an act against property of the estate provided by Section 362(a) continues only until the property is no longer property of the estate. *See* 11 U.S.C. § 362(c)(1). Upon dismissal, discharge or the entry of an order terminating the automatic stay with respect to PFC, PFC will be free to exercise the call provision in its Note.

### C. Failure to Disclose

The Debtor asserts that the Court must determine whether the call provision is unenforceable because the Debtor was not specifically told about the provision when she signed the Note. In essence the Debtor seems to be seeking reformation of the Note through her posthearing brief. The Debtor has sought no affirmative relief against PFC, and the Court will not consider this issue unless and until it is properly raised and PFC has had an opportunity to respond.

### D. Loss of PFC's Charter

In her posthearing brief, the Debtor also raised for the first time the question of whether PFC has standing to pursue its motion because PFC allegedly lost its charter on May 16, 1998, or because the Debtor has received communications from another mortgage company concerning the Note. There is no proof before the Court to support either of these allegations, and the Court will not consider these issues.

### IV. CONCLUSION

Based upon the foregoing, the Court concludes that PFC did not properly exercise its option to call the Debtor's Note prior to the filing of her Chapter 13 petition, and PFC is prevented from doing so now by the automatic stay. PFC is not entitled to relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(2) because the Debtor has equity in her property. Because the parties' arguments and proof focused on the effect of the PFC call provision and the value of the Debtor's residence, but not upon whether the Debtor's plan is capable of confirmation, the Court will conduct a further hearing to determine whether the plan as proposed or amended prior to hearing complies with the requirements of 11 U.S.C. §§ 1322(b)(5) and 1325, and whether cause exists to grant PFC relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1). The Court will direct the Bankruptcy Court Clerk to issue a notice concerning the scheduling of that hearing. At the conclusion of that hearing, the Court will enter a separate order consistent with this memorandum and the Court's further conclusions.